**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES** | ) |
| | ) |
| **v.** | ) |
| | ) **No. 05-10564-JLT** |
| | ) |
| **Xiomara Cheng** | ) |

### GOVERNMENT'S RESPONSE TO PETITIONER'S § 2255 MOTION

The United States, by and through counsel Michael J.
Sullivan, United States Attorney, and Rachel E. Hershfang,
Assistant United States Attorney, hereby responds to the motion
filed by petitioner Xiomara Cheng ("Cheng") seeking relief from
her sentence under Title 28, United States Code, Section 2255.
In that motion, Cheng claims that the Supreme Court's decision in
United States v. Booker, United States v. Fanfan, 125 S.Ct. 738,
at 749, 756 (2005)  dictates a reduction in -- or, at the least,
a reconsideration of -- the sentence imposed by this Court over
two years ago.  For the reasons set forth below, the government
submits that this request is both procedurally barred and legally
baseless, and that the motion should be denied.

### PROCEDURAL HISTORY

On September 26, 2001, a federal grand jury returned a two-
count Indictment against Xiomara Cheng, charging her with money
laundering.  Each count of the indictment alleged that Cheng had
"knowingly and willfully conduct[ed] and attempt[ed] to conduct a
financial transaction affecting interstate or foreign commerce"

using "property represented by a law enforcement officer to be proceeds of specified unlawful activity." The indictment (in both counts) further identified the specified unlawful activity ("SUA") at issue as "the possession and distribution of a controlled substance." These charges were thus brought under the so-called "money-laundering sting" provision of Title 18, United States Code, Section 1956(a)(3).

The charges against Cheng stemmed from a joint operation by the Federal Bureau of Investigation ("FBI") and the United States Customs Service ("Customs"). Using a cooperating witness ("CW"), the agencies sent a series of three cash payments through Cheng to an undercover address in Miami, Florida. [PSR ¶13].¹ In a series of consensually monitored and recorded conversations, the CW and Cheng arranged for Cheng to transfer thousands of dollars for the CW. [PSR ¶¶15-23]. During those conversations, Cheng remarked that she had means of transporting cash that were "not suspicious" [PSR ¶15]; offered to take up to $100,000 to Colombia for the CW [id.]; and agreed to take $100,000 on a bus to Miami for the CW. [PSR ¶17]. In conduct charged in Count One, Cheng accepted $30,000 that the CW represented was needed to pay transportation costs for some "manteca" -- common street slang

---

¹ Unless otherwise indicated, facts set forth in the government's response are taken from the Presentence Report ("PSR"), the plea agreement between the parties, attached thereto ("plea agreement") and the transcript of the sentencing hearing on April 1, 2003 ("4/1 Tr. [page number]").

for heroin. [PSR ¶¶18,19,20]. In the conduct charged in Count

Two, Cheng again voiced concerns about her laundering amounts

that might arouse suspicion and offered to transport larger sums

($100,000-200,000) by plane. [PSR ¶22]. Cheng laundered $60,000

for the CW on that second occasion. [PSR ¶23].

Cheng did not object to the PSR. [PSR p.22].

On September 5, 2002, pursuant to a plea agreement, Cheng

pled guilty to Counts One and Two of the Indictment. [PSR ¶8].

Cheng's applicable Guideline Sentencing Range ("GSR") was

determined under the Guidelines Manual dated November 1, 1998.

[PSR ¶27].[2]  Under the Guidelines, Cheng faced a Base Offense

Level of 20.  See PSR ¶30; USSG §2S1.1(a)(2)(1998) (copy attached

hereto for the Court's convenience). Cheng's admission that she

laundered money "with the intent to promote the carrying on of

specified unlawful activity, to wit, the possession and

_____

[2] The plea agreement had calculated Cheng's GSR using a
later version of the Guidelines, with a changed methodology for
calculating the GSR in money-laundering cases.  Under the later
Guidelines, as set forth in the plea agreement, had Cheng been
held responsible for both charged and uncharged conduct (as the
government maintained she should be), she would have faced a Base
Offense Level ("BOL") of 24 and a Total Offense Level ("TOL") of
21. [plea agreement ¶3].  Under Cheng's calculation, in which she
sought to have the Court ignore relevant uncharged conduct, her
BOL would have been 22 and TOL 19. [plea agreement ¶3].  At the
sentencing hearing, both parties agreed to use the calculations
set forth in the PSR (using the 1998 manual), which were more
advantageous to Cheng than the total offense calculations set out
in the plea agreement [reflected in the government's position]
(using the later manual).  When asked by the Court if the
guidelines were properly calculated in the PSR, both parties
agreed they were. [4/1/03 Tr. 2-3, 8].

distribution of a controlled substance," triggered a specific offense characteristic under USSG §2S1.1(b)(1)[3] that increased Cheng's offense by three levels, bringing Cheng's offense total to 23. By accepting responsibility, Cheng became eligible for a three-level downward adjustment, bringing her TOL to 20. [PSR 6]. With a criminal history category of I and TOL of 20, Cheng's GSR was 33-41 months. [PSR ¶93]. The Court accepted Cheng's plea.

At the sentencing hearing, Cheng argued for a downward departure based on either her "extraordinary presentence rehabilitation" or her family circumstances. [4/1/03 Tr. passim]. Explaining that the INS would likely deport her if the Court imposed the minimum sentence under the guidelines, and highlighting the effect that her deportation would have on her husband and child, Cheng argued that the Court should depart downward based on her family circumstances [4/1/03 Tr. 4-5, 7]. Both departure requests were denied. The Court sentenced Cheng to 33 months' imprisonment, the minimum under the Guidelines. [4/1/02 Tr.9].[4]

---

[3] "If the defendant knew of believed that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances, increase by 3 levels."

[4] Cheng's Petition is timely only because she appealed one of these denials to the First Circuit, which (after briefing by the parties) asked for clarification from this Court as to the basis for its denial of Cheng's family circumstances departure request. The Court issued a brief, clarifying Order, and the appeal was dismissed for lack of jurisdiction in August, 2004.

4

## **ARGUMENT**

Cheng now moves for relief pursuant to 28 U.S.C. § 2255(3). That statute permits prisoners to seek habeas relief within one year of the date on which a right was initially recognized by the Supreme Court if that right has newly recognized by the Supreme Court and made retroactive to cases on collateral review.

The only claims set forth in the Petition are based on United States v. Booker, 125 S.Ct. 738 (2005). Cheng argues that Booker should be applied retroactively on collateral review because (1) "aggravating enhancements" applicable under the United States guidelines were not specifically pled in the indictment; (2) "aggravated enhancements" should not have been used to calculate Cheng's sentence, or should have been listed within the indictment for a jury to decide; (3) the three-level increase driven by a specific offense characteristic should not have been applied; and (4) Cheng's family circumstances and presentence rehabilitation justify reducing her sentence under Booker.[5]

---

[5] Cheng also complains (in "Ground Two") both that her uncharged launder of $30,000 and that her discussion of sending $100,000 on behalf of the CW were inappropriately considered at her sentencing. Both of these claims are soundly defeated by the undisputed record. As to the first, the PSR makes clear that Cheng was sentenced under the 1998 Guidelines. Under the applicable provision, USSG §2S1.1, the sum of funds laundered influences the BOL only if the sum exceeds $100,000. See USSG §2S1.1(b)(2) (1998 ed.). Without the uncharged launder, Cheng's total laundered sum was $60,000; with it, the total was $90,000. [See PSR ¶¶16-23 (describing three launders of $30,000 each)].

5

On January 12, 2005, the Supreme Court decided <u>United States</u> <u>v. Booker</u>, 125 S.Ct. 738 (2005), holding that the principles enunciated in <u>Blakely</u> applied to the United States Sentencing Guidelines ("guidelines"). Although the Supreme Court concluded that a mandatory guideline system violates the Sixth Amendment, the Court in a separate decision preserved the guideline sentencing scheme by severing those provisions of the Sentencing Reform Act ("the Act") that made the guidelines mandatory. <u>Booker</u>, 125 S.Ct. at 756. Consequently, the guidelines are now "effectively advisory." <u>Id</u>. As modified, the Act now "requires a sentencing court to consider Guidelines ranges, <u>see</u> 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but permits the court to tailor the sentence in light of other statutory concerns as well. <u>See</u> 18 U.S.C. §3553(a) (Supp. 2004)." <u>Id</u>.

<u>Booker</u> does not provide Cheng with the relief she seeks, for two reasons. First, the advisory guideline system established by <u>Booker</u> eliminates any constitutional issue in her sentencing, since Cheng was sentenced based solely on facts admitted by her. Second, even were Cheng more felicitously situated with respect

_____

Therefore, even <u>had</u> the uncharged transaction been considered, it would have had no effect on Cheng's BOL. Furthermore, there is no mention of the uncharged transaction in the PSR's calculation of BOL. [PSR ¶¶28-37]. With respect to the claim about her agreement to transport $100,000, the evidence is even more elusive. That offer is described in the PSR (¶15), but appears nowhere in the offense level computation [PSR ¶¶28-37], nor in the transcript of the sentencing hearing. Cheng's complaints are groundless.

to the facts of her case, the new procedural rules do not apply
retroactively on collateral review. Because the Petition fails as
a matter of law, it must be summarily dismissed. E.g., Carey v.
United States, 50 F.3d 1097, 1098 (1st Cir. 1995) ("Summary
dismissal of a §2255 petition is appropriate if it plainly
appears from the face of the motion that the movant is not
entitled to relief").[6]

## 1.   Booker eliminates any constitutional defect in Cheng's sentencing.

The Supreme Court in both Blakely and Booker held that Sixth
Amendment rights are not implicated when a judge sentences based
on facts admitted by the defendant. Booker, 125 S.Ct. at 755;
Blakely v. Washington, 124 S.Ct. 2531, 2537 (2004). By pleading
guilty to an indictment alleging that she "knowingly and
willfully conduct[ed] and attempt[ed] to conduct a financial
transaction affecting interstate or foreign commerce" using
"property represented by a law enforcement officer to be proceeds

---

[6] In 2255 matters, the burden is on the petitioner to
establish both the need for an evidentiary hearing, and her
entitlement to the relief she seeks. United States v. McGill, 11
F.3d 223, 225 (1st Cir. 1993); see also David v. United States
134 F.3d 470, 478 (1st Cir. 1998) (even if not conclusively
belied by the record, §2255 petitions based on vague, conclusory
or incredible claims may be summarily dismissed).  Where a
petition: "(1) is inadequate on its face; or, (2) although
facially adequate, is conclusively refuted as to the alleged
facts by the files and records of the case," summary dismissal is
appropriate.  United States v. DiCarlo, 575 F.2d 952, 954 (1st
Cir. 1978).  See also McGill, 11 F.3d at 225. ("In most
situations, motions can be 'heard' effectively on the
papers...").

of specified unlawful activity," further identified as "the possession and distribution of a controlled substance," Cheng acknowledged that she was subject to a sentence of up to 20 years on each count alone. See PSR ¶92; see also plea agreement, ¶2 (penalty provisions). The Court sentenced Cheng to 33 months. Thus, even were Booker applicable to Cheng's case -- which it is not, as described below -- the Court could have sentenced her to 40 years based on the facts she agreed to in her plea. In short, Cheng's sentence did not exceed the maximum authorized by the facts established through the defendant's admissions in her guilty plea, and therefore did not violate any post-Booker Sixth Amendment right. Even if Booker applied, it would not give Cheng the relief she seeks.

## 2. *Booker* **does not apply retroactively on collateral review**

Even assuming that Cheng had an arguable Sixth Amendment claim, her Petition nevertheless fails because the constitutional rights first recognized in Apprendi v. New Jersey, 530 U.S. 466 (2000) and subsequently extended in both Blakely and Booker do not apply retroactively in §2255 proceedings. Every court that has considered this issue post-Blakely has refused to do what Cheng asks here (at least until directed otherwise by the Supreme Court). E.g., Varela v. United States, 400 F.3d 864, 868(11th Cir. 2005) ("Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply

retroactively to § 2255 cases on collateral review." (citation omitted)); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005) (Booker will not be applied retroactively to cases in which the conviction and sentences became final prior to Booker being issued); Green v. United States, 397 F.3d 101, 103 (2nd Cir. 2005) (neither Booker nor Blakely applies retroactively to a second or successive § 2255 proceeding); United States v. Leonard, No. 04-6197 (10th Cir. Jan. 24, 2005) (Blakely and Booker are new rules of criminal procedure that apply "retroactively only to cases pending on direct review or cases that are not yet final."); United States v. Price, No. 04-7058 (10th Cir. Dec. 16, 2004) (Blakely does "not apply retroactively to cases on collateral review."). Indeed, the Supreme Court itself in Booker expressly noted that its holding applied to "all cases on direct review." 125 S.Ct. at 769.

The reason for this consistent line of cases is that Blakely/Booker reflects a "new" rule of criminal procedure, and is not to be applied retroactively. Teague v. Lane, 489 U.S. 288 (1989); Butler v. McKellar, 494 U.S. 407, 415 (1990) (unless a legal principle is compelled by existing precedent, it is a new rule that will not be applied retroactively).[7] Such new rules

---

[7] In support of its statement that Booker applied to "all cases on direct review," the Supreme Court cited Griffith v. Kentucky, 479 U.S. 314 (1987), and included the following parenthetical quotation: "'[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases

9

are applied retroactively only in the rare case, when they are "watershed rules" -- that is, rules without which "the likelihood of an accurate conviction is seriously diminished." Schriro v. Summerlin, 124 S.Ct. 2519, 2523 (2004).

The conclusion that Blakely/Booker cannot be applied retroactively under these principles is demonstrated by the courts' analysis of whether the Supreme Court decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002) are to be applied retroactively. The First Circuit has already concluded that neither Apprendi nor Blakely applies retroactively on collateral review unless and until the Supreme Court says they do. Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir. 2000) ("[I]t is clear that the Supreme Court has not made the rule [in Apprendi] retroactive to cases on collateral review...."); Cuevas v. Derosa, 386 F.3d 367, 368 (1st Cir. 2004) (denying an application for leave to file a second or successive 2255 petition because the Supreme Court has not yet made Blakely retroactive to cases on collateral review). Every other circuit to consider the question has reached the same conclusion. E.g., United States v. Swinton, 333 F.3d 481 (3d Cir. 2003); Coleman v. United States, 329 F.3d 77 (2d Cir. 2003);

_____

... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.'" 125 S.Ct. at 769. Thus, the Court considers the Booker rule to be "new."

10

Goode v. United States, 305 F.3d 378 (6th Cir. 2002); United
States v. Brown, 305 F.3d 304 (5th Cir. 2002); Curtis v. United
States, 294 F.3d 841 (7th Cir. 2002); United States v. Mora, 293
F.3d 1213 (10th Cir. 2002); United States v. Sanchez-Cervantes,
282 F.3d 664 (9th Cir. 2002); McCoy v. United States, 266 F.3d
1245 (11th Cir. 2001); United States v. Moss, 252 F.3d 993 (8th
Cir. 2001); United States v. Sanders, 247 F.3d 139 (4th Cir.
2001). Although Sustache-Rivera and these other cases dealt with
Apprendi, the same result is required here because judicial
factfinding does not increase the likelihood of a wrongful
conviction and hence Blakely is no more of a watershed rule.
Cuevas, 386 F.3d at 368.

To the extent that anything further is needed to conclude
that Blakely/Booker do not apply retroactively on collateral
review, the Court need look only so far as the Supreme Court's
decision in Schriro v. Summerlin, 124 S.Ct. 2519, issued the same
day as Blakely. In Summerlin, the Court considered whether Ring
v. Arizona, 536 U.S. 584 (2002), applied retroactively to cases
that had already become final when Ring was decided. Ring, of
course, held that because Arizona law authorized the death
penalty only if an aggravating factor was present, Apprendi
required the existence of such a factor to be proved to a jury
rather than to a judge. Ring, 536 U.S. 584.   The petitioner

Summerlin's death sentence was based on judicial factfinding and had become final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Summerlin, 124 S.Ct. at 2526. The Court explained that a "new rule" resulting from one of its decisions applied to convictions that were already final only in limited circumstances. New substantive rules generally apply retroactively, but new procedural rules generally do not, with a sole exception for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," which are given retroactive effect. Id. at 2523. The Court concluded that Ring was properly classified as procedural, rather than substantive, because it did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, it merely changed the method of determining whether the defendant engaged in that conduct. Id. at 2524.

The Court also held that Ring did not fall within Teague's narrow exception for "watershed rules" of criminal procedure. Id. To qualify as a watershed rule, a new procedural rule must be one "without which the likelihood of an accurate conviction is seriously diminished." The Court held that Ring did not announce a watershed rule of criminal procedure because the Court could

12

not confidently say that judicial factfinding seriously diminished the accuracy of capital sentencing proceedings. Id. at 2524-25. Because Summerlin dooms any argument that Blakely (and, by extension, Booker) could apply retroactively, Cheng's Petition should be denied. See also Zawadzki v. United States, Civ. No. 04-CV-12114-WGY (D. Mass. 2004) (Young, C.J.) (dismissing §2255 Petition because Blakely is not retroactive and "does not fit the exception under Teague v. Lane"); Colon v. United States, 04-10289-NG (D. Mass. 2005)(Gertner, J.) (denying motion to amend §2255 Petition to assert Booker claim without prejudice because Supreme Court has not yet declared that Booker applies retroactively on collateral  review); Orchard v. United States, 332 F.Supp.2d 275, 277 (D.Me. 2004)("the extension of the Apprendi rule announced in Blakely is a rule of criminal procedure that may not be applied retroactively"). See generally Cuevas v. C.J. DeRosa, 386 F.3d 367, 368 (1st Cir. 2004) ("... if the Supreme Court in the future makes Blakely retroactive, the petitioner may at any time attempt to assert a claim by means of a second or successive §2255 petition.")

## CONCLUSION

The sentence imposed by this Court did not violate the Petitioner's Sixth Amendment rights. Even assuming a Sixth Amendment violation could have occurred, the Petitioner did not raise the constitutional claim in her appeal, and her case was

13

"final" prior to the Supreme Court's decision in <u>Booker</u>.  The
rights established in <u>Booker</u> and <u>Blakely</u> are not retroactively
applicable to cases on collateral review.  Thus, Cheng has not
advanced any grounds entitling her to relief and her Petition
under section 2255 must be summarily dismissed.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

RACHEL E. HERSHFANG
Assistant United States Attorney
617-748-3249

### CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the
person listed below a copy of the foregoing document by
depositing in the United States mail a copy of same in an
envelope bearing sufficient postage for delivery:

David A. Cooper
Cooper Law Associates
The Masonic Temple Building
127 Dorrance Street, 2nd Fl.
Providence, RI 02903

This 14th day of April, 2005.

RACHEL E. HERSHFANG

14

## PART S - MONEY LAUNDERING AND MONETARY TRANSACTION REPORTING

Historical Note: Introductory Commentary to this Part, effective November 1, 1987, was deleted effective November 1, 1990 (see Appendix C, amendment 342).

§2S1.1.    **Laundering of Monetary Instruments**

    (a)    Base Offense Level:

        (1)    **23**, if convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A);

        (2)    **20**, otherwise.

    (b)    Specific Offense Characteristics

        (1)    If the defendant knew or believed that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances, increase by **3** levels.

        (2)    If the value of the funds exceeded $100,000, increase the offense level as follows:

| Value (Apply the Greatest) | Increase in Level |
|---|---|
| (A)  $100,000 or less | no increase |
| (B)  More than $100,000 | add **1** |
| (C)  More than $200,000 | add **2** |
| (D)  More than $350,000 | add **3** |
| (E)  More than $600,000 | add **4** |
| (F)  More than $1,000,000 | add **5** |
| (G)  More than $2,000,000 | add **6** |
| (H)  More than $3,500,000 | add **7** |
| (I)  More than $6,000,000 | add **8** |
| (J)  More than $10,000,000 | add **9** |
| (K)  More than $20,000,000 | add **10** |
| (L)  More than $35,000,000 | add **11** |
| (M)  More than $60,000,000 | add **12** |
| (N)  More than $100,000,000 | add **13**. |

    (c)    Special Instruction for Fines - Organizations

        (1)    In lieu of the applicable amount from the table in subsection (d) of §8C2.4 (Base Fine), use:

            (A)    the greater of $250,000 or 100 percent of the value of the funds if subsections (a)(1) and (b)(1) are used to determine the offense level; or

*Statutory Pr*

*Background*
*prohibits fi*
*activity," if*
*proceeds or*
*authorized i*

    *In ke*
*punishment.*
*higher statu*

    *A hig*
*§ 1956(a)(*
*encouraged*
*18 U.S.C. §*
*§ 1956(a)(1*

    *The a*
*magnitude c*
*Narcotics tr*
*to adequate*

Historical Note:
November 1, 19

§2S1.2.

(B) the greater of $200,000 or 70 percent of the value of the funds if subsections (a)(2) and (b)(1) are used to determine the offense level; or

(C) the greater of $200,000 or 70 percent of the value of the funds if subsection (a)(1) but not (b)(1) is used to determine the offense level; or

(D) the greater of $150,000 or 50 percent of the value of the funds if subsection (a)(2) but not (b)(1) is used to determine the offense level.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1956.

*Background:* The statute covered by this guideline is a part of the Anti-Drug Abuse Act of 1986, and prohibits financial transactions involving funds that are the proceeds of "specified unlawful activity," if such transactions are intended to facilitate that activity, or conceal the nature of the proceeds or avoid a transaction reporting requirement. The maximum term of imprisonment authorized is twenty years.

In keeping with the clear intent of the legislation, this guideline provides for substantial punishment. The punishment is higher than that specified in §2S1.2 and §2S1.3 because of the higher statutory maximum, and the added elements as to source of funds, knowledge, and intent.

A higher base offense level is specified if the defendant is convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A) because those subsections apply to defendants who encouraged or facilitated the commission of further crimes. Effective November 18, 1988, 18 U.S.C. § 1956(a)(1)(A) contains two subdivisions. The base offense level of 23 applies to § 1956(a)(1)(A)(i) and (ii).

The amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise. Narcotics trafficking is included as a factor because of the clearly expressed Congressional intent to adequately punish persons involved in that activity.

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendments 212-214); November 1, 1991 (see Appendix C, amendments 378 and 422).

## §2S1.2. Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

(a) Base Offense Level: **17**

(b) Specific Offense Characteristics

    (1)    If the defendant knew that the funds were the proceeds of:

        (A)    an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances, increase by **5** levels; or

        (B)    any other specified unlawful activity (see 18 U.S.C. § 1956(c)(7)), increase by **2** levels.

    (2)    If the value of the funds exceeded $100,000, increase the offense level as specified in §2S1.1(b)(2).

(c)    Special Instruction for Fines - Organizations

    (1)    In lieu of the applicable amount from the table in subsection (d) of §8C2.4 (Base Fine), use:

        (A)    the greater of $175,000 or 60 percent of the value of the funds if subsection (b)(1)(A) is used to determine the offense level; or

        (B)    the greater of $150,000 or 50 percent of the value of the funds if subsection (b)(1)(B) is used to determine the offense level.

*Commentary*

*Statutory Provisions*: *18 U.S.C. § 1957. For additional statutory provision(s), see Appendix A (Statutory Index).*

*Application Note*:

1.    *"Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include racketeering offenses (18 U.S.C. § 1961(1)), drug offenses, and most other serious federal crimes but does not include other money-laundering offenses.*

*Background*: *The statute covered by this guideline is a part of the Anti-Drug Abuse Act of 1986, and prohibits monetary transactions that exceed $10,000 and involve the proceeds of "specified unlawful activity" (as defined in 18 U.S.C. § 1956), if the defendant knows that the funds are "criminally derived property." (Knowledge that the property is from a specified unlawful activity is not an element of the offense.) The maximum term of imprisonment specified is ten years.*

    *The statute is similar to 18 U.S.C. § 1956, but does not require that the recipient exchange or "launder" the funds, that he have knowledge that the funds were proceeds of a specified unlawful activity, nor that he have any intent to further or conceal such an activity. In keeping with the intent of the legislation, this guideline provides for substantial punishment. The offense levels are higher than in §2S1.3 because of the higher statutory maximum and the added element of knowing that the funds were criminally derived property.*

*The 2-level increase in subsection (b)(1)(B) applies if the defendant knew that the funds were not merely criminally derived, but were in fact the proceeds of a specified unlawful activity. Such a distinction is not made in §2S1.1, because the level of intent required in that section effectively precludes an inference that the defendant was unaware of the nature of the activity.*

Historical Note: Effective November 1, 1987. Amended effective November 1, 1989 (see Appendix C, amendment 215); November 1, 1991 (see Appendix C, amendment 422).

§2S1.3.    **Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports**

     (a)      Base Offense Level: **6** plus the number of offense levels from the table in §2F1.1 (Fraud and Deceit) corresponding to the value of the funds.

     (b)      Specific Offense Characteristics:

           (1)      If the defendant knew or believed that the funds were proceeds of unlawful activity, or were intended to promote unlawful activity, increase by **2** levels.

           (2)      If (A) subsection (b)(1) does not apply; (B) the defendant did not act with reckless disregard of the source of the funds; (C) the funds were the proceeds of lawful activity; and (D) the funds were to be used for a lawful purpose, decrease the offense level to level **6**.

     (c)      Cross Reference

           (1)      If the offense was committed for the purposes of violating the Internal Revenue laws, apply the most appropriate guideline from Chapter Two, Part T (Offenses Involving Taxation) if the resulting offense level is greater than that determined above.

*Commentary*

*Statutory Provisions*: 26 U.S.C. § 7203 (if a violation based upon 26 U.S.C. § 6050I), § 7206 (if a violation based upon 26 U.S.C. § 6050I); 31 U.S.C. §§ 5313, 5314, 5316, 5324. For additional statutory provision(s), see Appendix A (Statutory Index).

*Application Note:*

1.      *For purposes of this guideline, "value of the funds" means the amount of the funds involved in the structuring or reporting conduct. The relevant statutes require monetary reporting without regard to whether the funds were lawfully or unlawfully obtained.*

# SENTENCING TABLE
## (in months of imprisonment)

| Offense Level | Criminal History Category (Criminal History Points) | | | | | |
|---|---|---|---|---|---|---|
| | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
| **Zone A** 1 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| 2 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 1-7 |
| 3 | 0-6 | 0-6 | 0-6 | 0-6 | 2-8 | 3-9 |
| 4 | 0-6 | 0-6 | 0-6 | 2-8 | 4-10 | 6-12 |
| 5 | 0-6 | 0-6 | 1-7 | 4-10 | 6-12 | 9-15 |
| 6 | 0-6 | 1-7 | 2-8 | 6-12 | 9-15 | 12-18 |
| 7 | 0-6 | 2-8 | 4-10 | 8-14 | 12-18 | 15-21 |
| 8 | 0-6 | 4-10 | 6-12 | 10-16 | 15-21 | 18-24 |
| **Zone B** 9 | 4-10 | 6-12 | 8-14 | 12-18 | 18-24 | 21-27 |
| 10 | 6-12 | 8-14 | 10-16 | 15-21 | 21-27 | 24-30 |
| **Zone C** 11 | 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |
| 12 | 10-16 | 12-18 | 15-21 | 21-27 | 27-33 | 30-37 |
| 13 | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| 14 | 15-21 | 18-24 | 21-27 | 27-33 | 33-41 | 37-46 |
| 15 | 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |
| 16 | 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |
| 17 | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63 |
| 18 | 27-33 | 30-37 | 33-41 | 41-51 | 51-63 | 57-71 |
| 19 | 30-37 | 33-41 | 37-46 | 46-57 | 57-71 | 63-78 |
| 20 | 33-41 | 37-46 | 41-51 | 51-63 | 63-78 | 70-87 |
| 21 | 37-46 | 41-51 | 46-57 | 57-71 | 70-87 | 77-96 |
| 22 | 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |
| 23 | 46-57 | 51-63 | 57-71 | 70-87 | 84-105 | 92-115 |
| 24 | 51-63 | 57-71 | 63-78 | 77-96 | 92-115 | 100-125 |
| 25 | 57-71 | 63-78 | 70-87 | 84-105 | 100-125 | 110-137 |
| 26 | 63-78 | 70-87 | 78-97 | 92-115 | 110-137 | 120-150 |
| 27 | 70-87 | 78-97 | 87-108 | 100-125 | 120-150 | 130-162 |
| **Zone D** 28 | 78-97 | 87-108 | 97-121 | 110-137 | 130-162 | 140-175 |
| 29 | 87-108 | 97-121 | 108-135 | 121-151 | 140-175 | 151-188 |
| 30 | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| 31 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| 32 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| 33 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| 34 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| 35 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| 36 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| 37 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life |
| 38 | 235-293 | 262-327 | 292-365 | 324-405 | 360-life | 360-life |
| 39 | 262-327 | 292-365 | 324-405 | 360-life | 360-life | 360-life |
| 40 | 292-365 | 324-405 | 360-life | 360-life | 360-life | 360-life |
| 41 | 324-405 | 360-life | 360-life | 360-life | 360-life | 360-life |
| 42 | 360-life | 360-life | 360-life | 360-life | 360-life | 360-life |
| 43 | life | life | life | life | life | life |